UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SEAN CLOVER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:15-cv-01513-JMS-MPB |
| CHAPLAIN SMITH, | ) ) ) ) |
| Defendant. | ) |

**Entry Discussing Motion for Summary Judgment**

Plaintiff Sean Clover, an Indiana inmate, brings this action alleging that, while he was incarcerated at the Correctional Industrial Facility ("CIF"), his right to practice his religion guaranteed by the First Amendment was violated when Friday Islamic Jummah prayer time was modified from 1:00 – 3:00 p.m. to 12:00 – 2:00 p.m.[1] The remaining defendant, Chaplain Smith, moves for summary judgment and Clover has responded. For the following reasons, Smith's motion for summary judgment [dkt 28] is **granted.**

**I. Standard of Review**

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view

---

[1] Clover had also alleged a request for injunctive relief under the Religious Land Use and Institutionalized Persons Act, but that claim was dismissed as moot when Clover was transferred out of CIF.

the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490. Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.,* 242 F.3d 713, 723 (7th Cir. 2001).

## II. Facts

During the time that Clover's claims in this case arose, he was incarcerated at CIF and Smith was the Chaplain at that facility. In August of 2015, Clover filed an informal grievance regarding the scheduling of Islamic Jummah. Jummah is an Islamic community prayer service, conducted on Fridays, which involves a sermon by an Imam, followed by a prayer.

On August 25, 2015, Chaplain Smith responded to Clover's informal grievance noting that "all chapel movement is from 12-2:00 p.m. for all groups," and that he "consulted with Islamic Chaplain Aleem prior to and after scheduling Islam groups."[2] In further investigation of his grievance, on September 9, 2015, Chaplain Smith indicated to Superintendent Wendy Knight that other facilities visited by Islamic Chaplain Aleem, including Miami Correctional Facility, Indiana State Penitentiary, and Pendleton Correctional Facility, have their Jummah services the same time as CIF.

Chaplain Smith does not dispute that Clover's desire for a different time for Jummah is based on his sincerely held beliefs, but explains that CIF offers general services, intended to

---

[2] Clover objects to the admission of evidence regarding information Chaplain Aleem provided to Smith concerning the scheduling of prayer time as inadmissible hearsay. But this evidence is not inadmissible hearsay because it is not being used to prove the truth of Chaplain Aleem's statements, but to show Chaplain Smith's efforts in considering Clover's grievance regarding prayer time. *See* Fed. R. Evid. 801(c).

accommodate a wide variety of Muslim practices, and does not adopt the practices of any specific Muslim sect. Clover could continue to attend Friday services with the general Muslim community in corporate worship.[3] CIF weekly religious services balance the needs of corporate worship and accommodating a wide variety of Muslim practices and times when volunteers could be present at the facility.

David Liebel is the Director of Religious and Volunteer Services for the IDOC. As the Director of Religious and Volunteer Services for the IDOC, he oversees religious and volunteer policies, and provides technical assistance to facilities. On September 15, 2015, Liebel responded to Clover's Level II Formal Grievance Appeal stating that "There are a variety of teachings and understandings of the proper time for Jummah, whether it may be combined with other prayers. It is impossible for the IDOC to accommodate every understanding, nor does the department attempt to state which view is correct."

Correctional Industrial Facility Policy and Operational Procedure 01-03-101, is the policy governing religious programs and worship services. Operational Procedure 01-03-101 provides the policy for approval of religious programs and worship services. It provides in part that: "Religious programs approved by the Facility Head/designee shall be scheduled in an equitable manner and with regard to facility security, order, resources, and manageability. Staff shall be assigned to supervise religious programs as needed to provide adequate security and orderliness."

---

[3] Clover responds that his beliefs regarding the appropriate time for Jummah are not specific to a small sect, but reflect a general teaching of the Muslim faith. But Smith has submitted evidence that many other Muslim inmates participate in Jummah as scheduled and that the selection of the time was based on a consultation with a Muslim Chaplain. This is sufficient to support a conclusion that Smith based the scheduling for Jummah on an accommodation of as many Muslim inmates as possible.

The IDOC currently houses approximately 1,150 Muslim offenders. The IDOC utilizes islamicfinder.org to calculate prayer times, which is endorsed by the Islamic Society of North America, and approved by Muslim staff chaplains at the IDOC. Clover can continue to attend Friday Jummah with the general Muslim community every week.

### III. Discussion

Chaplain Smith moves for summary judgment on Clover's claim, arguing that he is entitled to qualified immunity. "Qualified immunity protects officers performing discretionary functions from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights that a reasonable person would know about." *Mustafa v. City of Chicago*, 442 F.3d 544, 548 (7th Cir. 2006). Analysis of the qualified immunity defense requires a consideration of: (1) whether the plaintiff's statutory or constitutional rights were violated and (2) whether the right was clearly established at the time. *Id.* "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (2011). Courts may decide qualified-immunity cases on the ground that a defendant's action did not violate a clearly established right without reaching the question of whether a constitutional right was violated at all. *See Pearson v. Callahan,* 555 U.S. 223, 236 (2009).

Smith argues that he is entitled to qualified immunity because there is no clearly established law that the rescheduling of prayer time at issue here violated Clover's First Amendment rights. Smith states that the scheduling of Jummah was based on a consideration of multiple factors, including the accommodation of other Muslim prisoners and volunteers to lead the service. It also included consultation with a Muslim Chaplain regarding the calculation of prayer times. Smith further points out that Clover was never excluded from participating in

Jummah as scheduled at CIF. According to Smith, based on these facts, it was not clearly established that he violated Clover's rights.

In response, Clover identifies no specifically analogous case to his claims here. He cites cases related to the provision of a religious diet in prison, see *Koger v. Bryan*, 523 F.3d 789 (7th Cir. 2008); *Willis v. Comm'r Ind. Dep't of Corr.*, 753 F.Supp. 2d 768 (S.D. Ind. 2010), but cases based on religious diet issues are not similar enough to Clover's claim regarding the scheduling of prayer to provide clearly established law which would govern Smith's actions. Clover also argues that Smith is not entitled to qualified immunity because he did know or should have known that his actions placed a substantial burden on the free exercise of his religion because Clover was prevented from participating in Jummah prayer at the time Clover believed was appropriate. While he has not cited a sufficiently analogous case which establishes that Smith's conduct was unconstitutional, Clover could defeat Smith's qualified immunity defense by presenting evidence that Smith's conduct was such an obvious violation of the constitutional right that a reasonable official would know without guidance from a court. *Ashcroft v. al-Kidd,* –––– U.S. ––––, 131 S.Ct. 2074, 2083 (2011) (To defeat a qualified-immunity defense, a plaintiff need not point to a case that is factually identical to the present suit, but "existing precedent must have placed the statutory or constitutional question beyond debate."); *Hope v. Pelzer*, 536 U.S. 730, 739-40 (2002).

Clover has not demonstrated that a reasonable official in Smith's position would have known that he was violating Clover's rights and therefore has not defeated the qualified immunity defense because. In fact, applicable case law exists to support a conclusion that even if prison officials make prayer time unavailable to certain inmates, they have not violated the First Amendment if the decision to do so is reasonably related to legitimate penological interests. *See O'Lone v. Estate of Shabazz,* 482 U.S. 342, 353 (1987) ("The very stringent requirements as to

the time at which Jumu'ah may be held may make it extraordinarily difficult for prison officials to assure that every Muslim prisoner is able to attend that service. While we in no way minimize the central importance of Jumu'ah to respondents, we are unwilling to hold that prison officials are required by the Constitution to sacrifice legitimate penological objectives to that end."); *see also Hall v. Sutton*, 581 F. App'x 580, 583 (7th Cir. 2014) ("Prison officials do not violate the First Amendment when they reschedule religious services because of time conflicts due to group activities or the unavailability of supervisory chaplains or volunteers to lead services."); *Hadi v. Horn,* 830 F.2d 779, 786–88 (7th Cir. 1987) (no First Amendment violation when prison cancelled prayer service because of scheduling conflict and no chaplain). Here, there is no evidence that Clover was excluded from attending the Jummah service. While it was held at a time that Clover believed was incorrect, deciding when to schedule this service was based on a number of legitimate factors, including the accommodation of other Muslim prisoners and volunteers to lead the service and consultation with a Muslim Chaplain regarding the calculation of prayer times. Based on these facts, Smith could not have known that he was violating Clover's First Amendment rights.

### IV. Conclusion

For the foregoing reasons, defendant Chaplain Smith is entitled to qualified immunity against Clover's claims. His motion for summary judgment [dkt 28] is **granted**. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 3/10/2017

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Jonathan Paul Nagy
INDIANA ATTORNEY GENERAL
jonathan.nagy@atg.in.gov

SEAN CLOVER
218097
INDIANA STATE PRISON
INDIANA STATE PRISON
Inmate Mail/Parcels
One Park Row
MICHIGAN CITY, IN 46360